Matter of Guttmacher (James M.) (2020 NY Slip Op 01989)





Matter of Guttmacher (James M.)


2020 NY Slip Op 01989


Decided on March 20, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 20, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, WINSLOW, BANNISTER, AND DEJOSEPH, JJ.


217 CA 19-00460

[*1]LAURENCE GUTTMACHER, M.D., CLINICAL DIRECTOR OF ROCHESTER PSYCHIATRIC CENTER, PETITIONER-RESPONDENT, FOR AN ORDER AUTHORIZING THE INVOLUNTARY TREATMENT OF JAMES M., RESPONDENT-APPELLANT.






SARAH M. FALLON, DIRECTOR, MENTAL HYGIENE LEGAL SERVICE, ROCHESTER (JANINE E. RELLA OF COUNSEL), FOR RESPONDENT-APPELLANT.
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (ALLYSON B. LEVINE OF COUNSEL), FOR PETITIONER-RESPONDENT. 


 Appeal from an order of the Supreme Court, Monroe County (Vincent M. Dinolfo, A.J.), entered January 14, 2019. The order authorized the Rochester Psychiatric Center to administer medication to respondent over his objection. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Petitioner commenced this proceeding seeking, inter alia, authorization to administer antipsychotic and mood-stabilizing medications to respondent over his objection pursuant to the parens patriae power of the State of New York (see Matter of Sawyer [R.G.], 68 AD3d 1734, 1734-1735 [4th Dept 2009]; see generally Rivers v Katz, 67 NY2d 485, 496-498 [1986], rearg denied 68 NY2d 808 [1986]). We conclude that Supreme Court properly granted the petition. Contrary to respondent's contention, petitioner met his burden of establishing by clear and convincing evidence that respondent lacks "the capacity to make a reasoned decision with respect to [the] proposed treatment" (Rivers, 67 NY2d at 497). Petitioner's evidence included proof that respondent suffered from, inter alia, bipolar disorder and antisocial personality disorder with narcissistic tendencies and that respondent was delusional and lacked insight regarding his illness (see Matter of William S., 31 AD3d 567, 568 [2d Dept 2006]; Matter of Mausner v William E., 264 AD2d 485, 486 [2d Dept 1999]). Indeed, petitioner established that respondent believed that he had cured himself of any mental illness whatsoever, thereby highlighting that respondent was unable even to perceive his mental illness, much less understand its effect on him and those around him (see Sawyer, 68 AD3d at 1734; Matter of Paris M. v Creedmoor Psychiatric Ctr., 30 AD3d 425, 426 [2d Dept 2006]; Matter of McConnell, 147 AD2d 881, 882 [3d Dept 1989], lv dismissed in part and denied in part 74 NY2d 759 [1989]). Although an expert physician testified on respondent's behalf that respondent does not suffer from any mental illness that is amenable to treatment, we perceive no reason to disturb the court's findings to the contrary based on petitioner's evidence (see Matter of Beverly F. [Creedmoor Psychiatric Ctr.], 150 AD3d 998, 998 [2d Dept 2017]; William S., 31 AD3d at 568). We reject respondent's related contention that the physician testifying in support of the petition gave conclusory or insufficient testimony on the issue of respondent's capacity (cf. Matter of Michael L., 26 AD3d 381, 382 [2d Dept 2006]).
Contrary to respondent's further contention, petitioner established by clear and convincing evidence that the proposed treatment was "narrowly tailored to give substantive effect to [his] liberty interest" (Rivers, 67 NY2d at 497; see Sawyer, 68 AD3d at 1735). An evaluation prepared by respondent's treating physician in support of the petition outlined for the court the [*2]medications that the physician proposed using for respondent's treatment, including the order in which such medications would be tried in the event that some were not tolerated by respondent or were ineffective. The evaluation further outlined the proposed benefits of treatment and any reasonably foreseeable adverse effects, and it also included other precautions such as monitoring respondent for adverse side effects through, inter alia, regular blood work and organ function tests. Another physician testifying in support of the petition stated that dosages of the medications "generally start low . . . often below . . . the recommended dose" to allow the treatment providers to observe and minimize any side effects. Moreover, the court's treatment order requires reports from respondent's treating hospital every three months after treatment is commenced so that the court can monitor the progress of respondent's treatment, and the court left open the possibility that the treatment order could be terminated if the court determines that respondent is not benefitting from continued treatment.
We have examined respondent's remaining contentions and conclude that none warrants reversal or modification of the order.
Entered: March 20, 2020
Mark W. Bennett
Clerk of the Court